UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.A., <br><br> Plaintiff, <br><br> v. <br><br> NINTENDO OF AMERICA INC., <br><br> Defendant. | Case No. 23-cv-02424-DMR <br><br> **ORDER ON MOTION TO COMPEL ARBITRATION OR TRANSFER** <br><br> Re: Dkt. No. 24 |

Plaintiff N.A., by and through his Guardian, Bruce Alls, filed this putative class action against Defendant Nintendo of America, Inc. ("Nintendo") for claims arising out of N.A.'s in-game purchases made while playing Nintendo's video game Mario Kart Tour. Nintendo now moves to compel arbitration, or in the alternative, to transfer the case to the United States District Court for the Western District of Washington. [Docket No. 24.] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion to compel arbitration is granted.

## I.   BACKGROUND

### A.   N.A.'s Complaint

N.A. is a minor. He alleges that one of Nintendo's most popular games is Mario Kart Tour, a series of racing games that can be downloaded for free on mobile or tablet devices. [Docket No. 1-2 (Compl.) ¶¶ 2, 10, 16.] Nintendo marketed and sold "virtual 'Lootboxes'" called "Spotlight Pipes" for "real-world currency" to Mario Kart Tour players. *Id.* at ¶ 3. A Lootbox is a "video game microtransaction in which the consumer purchases a reward containing one or more virtual items of differing value or rarity that is assigned at random." *Id.* at ¶ 13. Players of Mario Kart Tour could purchase in-game currency called "rubies" in packs costing up to $70 and could spend their rubies on various items and actions, including to "fire" Spotlight Pipes to unlock

1  prizes. *Id*. at ¶¶ 24-26.  N.A. alleges that he and other players were not told in advance what was
2  inside any particular Spotlight Pipe in Mario Kart Tour or the odds of winning something that may
3  be contained in a Spotlight Pipe "and thereby were functionally gambling on the chance of
4  winning some valuable prize." *Id*. at ¶ 3.  He alleges that Nintendo engaged in unfair, deceptive,
5  or unlawful acts or practices by allowing players, including minors, to pay money to gamble on
6  winning in-game items.  He further alleges that Nintendo "deceived, misled, and harmed
7  consumers," including minors, by steering players towards making such purchases, making it
8  difficult to advance in the game without making such purchases, and refusing to provide refunds
9  to minors who made such purchases.  *Id*. at ¶ 5.

N.A. alleges that he played Mario Kart Tour from 2021 to 2022 and spent over $170 making in-game purchases of rubies to fire Spotlight Pipes that were labeled non-refundable.  *Id*. at ¶¶ 43, 50.  He alleges that he made the purchases using his father's credit card that was linked to his Nintendo account and that he made many purchases without his father's permission.  *Id*. at ¶ 44.  N.A. alleges that he "would not have made the amount of in-game purchases that he did had he known the true odds of his being able to obtain any reward from the Spotlight Pipe, or that he would not be allotted a refund."  *Id*. at ¶ 47.

N.A. filed the complaint on March 17, 2023 in state court.  [Docket No. 1 (Notice of Removal).]  He brings claims for 1) declaratory judgment; 2) violation of Washington's Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq*.; 3) violation of California Business and Professions Code section 17200 *et seq*.; and 4) unjust enrichment.  N.A. brings this putative class action on behalf of all minors in the United States (the nationwide class) and California (the subclass) who "made a purchase to fire the Spotlight Pipe in the Mario Kart Tour game using real-world currency."  Compl. ¶ 55.  Nintendo removed the case on May 17, 2023.

### B. The Nintendo Account User Agreement

Nintendo submits evidence that to play Mario Kart Tour users must have a Nintendo Account, agree to the Nintendo Account User Agreement ("User Agreement"), and link their Nintendo Account to the Mario Kart Tour app.  [Docket No. 24-2 (Kiel Decl. July 21, 2023) ¶ 4.] *See also* Compl. ¶ 17 ("In order to keep track of a user's progress, an online Nintendo account is

2

required."). According to Nintendo, users must affirmatively check a box confirming, "I agree to the Nintendo Account User Agreement and I acknowledge that I have read the Nintendo Privacy Policy" before they can finish creating an account. Kiel Decl. ¶¶ 6-11, Exs. A (User Agreement), B.

At the top of the first page, the User Agreement states, "THIS IS AN IMPORTANT AGREEMENT THAT APPLIES TO YOUR USE OF THE NINTENDO ACCOUNT SERVICES!" User Agreement 1. It also instructs, "[i]f you are under the age of 18 (or the age of majority where you live), STOP! You must get your parent or legal guardian to read and accept this Agreement on your behalf." *Id*.

The User Agreement contains an arbitration provision:

> **16. Dispute Resolution; Binding Arbitration; Class Action Waiver**
>
> PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS.
>
> BY ENTERING INTO THIS AGREEMENT, YOU AND NINTENDO EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.
>
> a. . . . [a]ny matter we are unable to resolve and all disputes or claims arising out of or relating to the Nintendo Account Services or this Agreement, including its formation, enforceability, performance, or breach (each, a 'Claim') . . . shall be finally settled by binding arbitration administered by the American Arbitration Association (the 'AAA') . . . [t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all Claims. . . . Any such arbitration shall be conducted by the parties in their individual capacities only and not as a class action or other representative action, and the parties waive their right to file a class action or seek relief on a class basis. . . .

User Agreement § 16. Users may accept the User Agreement and opt out of the arbitration provision by sending written notice to Nintendo within 30 days from the date of creation of the Nintendo account. *Id*. at § 16(d); Kiel Decl. ¶ 15. According to Nintendo, no one with the initials N.A. or the last name "Alls" provided such notice. Kiel Decl. ¶ 16.

The User Agreement also contains a provision regarding the governing law and venue for disputes:

> **18. Governing Law; Venue**

3

> The laws of the State of Washington, U.S.A., without regard to its conflict of laws provisions, will govern this Agreement and any dispute of any sort pertaining to this Agreement or the Nintendo Account Services that might arise between you and Nintendo.
>
> The parties consent to the exclusive jurisdiction of the courts located in King County, Washington, U.S.A. with respect to the resolution of either of the following: (a) an allegation by either party that Section 16 is invalid or unenforceable or (b) any Claims, following (i) any opt out from the provisions of Section 16 exercised in accordance with the procedure set forth in Section 16(d) or (ii) a final determination that Section 16 is invalid or unenforceable.

User Agreement § 18.

N.A. alleges that he "does not recollect seeing, reading, or agreeing to [Nintendo's] Terms of Use prior to playing Mario Kart Tour prior to playing . . . and his Guardian also did not see, read, or agree to the terms." Compl. ¶ 54. He further alleges that "he does not consent to arbitrate any of the claims in this action and disaffirms the entirety of any end-user-license agreement, contract or agreement between him and [Nintendo]." *Id.*

Nintendo now moves to compel arbitration. In the alternative, it moves to transfer this action to the Western District of Washington pursuant to the venue provision in the User Agreement.

N.A. opposes the motion. He submitted a declaration with his opposition in which he again "disaffirm[s] the entirety of any [End User License Agreement, "EULA"], contract or agreement that was accepted through [his] Nintendo account." He also states that he has not played Mario Kart Tour or any other Nintendo game since filing this lawsuit. [Docket No. 30-2 (N.A. Decl. Aug. 21, 2023) ¶¶ 5, 6.]

**II.   LEGAL STANDARD**

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Section 4 of

4

the FAA ensures that "'private agreements to arbitrate are enforced according to their terms,'" *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The final clause of § 2, generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

"In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If both conditions are met, 'the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.'" *Id.* (quoting *Chiron*, 207 F.3d at 1130). Parties may delegate gateway issues of arbitrability to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017).

**III.   DISCUSSION**

Nintendo argues that N.A. agreed to the User Agreement and did not opt out of the arbitration provision. Accordingly, it moves to compel arbitration pursuant to the arbitration provision. N.A. does not dispute that he accepted the User Agreement, although he alleges that he

5

1  does not remember doing so. Compl. ¶ 54. He does not claim that he opted out of the arbitration
2  provision. He also does not argue that his claims in this action do not fall under the scope of the
3  arbitration provision. Instead, N.A. contends that he disaffirmed the User Agreement in its
4  entirety under California law and thus rendered the agreement "null in its entirety," including the
5  arbitration provision. Opp'n 7-8 (quotation marks and citation omitted).

6  California Family Code section 6700 provides that "a minor may make a contract in the
7  same manner as an adult, subject to the power of disaffirmance" provided by section 6710, with
8  certain exceptions to a minor's ability to contract that do not apply here. Under section 6710, a
9  minor may disaffirm a contract "before majority or within a reasonable time" after reaching
10 majority. Cal. Fam. Code § 6710 ("Except as otherwise provided by statute, a contract of a minor
11 may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case
12 of the minor's death within that period, by the minor's heirs or personal representative."). "A
13 contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an
14 unequivocal intent to repudiate its binding force and effect." *Spencer v. Collins*, 156 Cal. 298, 303
15 (1909). "No specific language is required to communicate an intent to disaffirm." *Berg v.
16 Traylor*, 148 Cal. App. 4th 809, 820 (2007). "Disaffirmation by a minor rescinds the entire
17 contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000
18 (N.D. Cal. 2012) (citing *Scollan v. Gov't Employees Ins. Co.*, 222 Cal. App. 2d 181, 183-84
19 (1963)).

20 N.A. argues that he disaffirmed the User Agreement by filing this action and specifically
21 pleading disaffirmation in the complaint. Opp'n 8 (citing Compl. ¶ 54). Nintendo disputes the
22 effectiveness of the purported disaffirmation. *See* Mot. 19; Reply 4. The court need not resolve
23 this dispute because the issue of disaffirmation does not relate to contract formation; rather, it goes
24 to whether the User Agreement is enforceable, an issue that the parties delegated to an arbitrator.
25 *See* User Agreement § 16(a) ("all disputes or claims arising out of or relating to the Nintendo
26 Account Services or this Agreement, including its formation, enforceability, performance, or
27 breach . . . shall be finally settled by binding arbitration"). In *Three Valleys Municipal Water
28 District v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991), the Ninth Circuit held

that "a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate." (emphasis in original). However, "[i]f the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is 'voidable' because the parties have agreed to arbitrate the dispute." *Id*. at 1140. Examples of "voidable" contracts are "those 'where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract.'" *Id*. (emphasis added) (quoting Restatement (Second) Contracts § 7 comment b (1981)); *see, e.g., A.C. by & through Carbajal v. Nintendo of Am. Inc.*, No. C20-1694 TSZ, 2021 WL 1840835, at *2 (W.D. Wash. Apr. 29, 2021) (declining to reach issue of minor's purported disaffirmation of agreement containing arbitration provision because it did not relate to contract formation, citing *Three Valleys*).

Although Nintendo cited *Three Valleys* in its motion, *see* Mot. 13, N.A. does not address the case. Instead, he argues that by disaffirming the User Agreement in its entirety, he is not bound by its arbitration provision, citing three cases. Opp'n 8-10. None are persuasive.

First, in *R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 WL 6792801, at *1 (C.D. Cal. July 30, 2019), the minor plaintiff filed a putative class action against a videogame maker challenging the sale of lootboxes in the game Fortnite. The plaintiff was required to accept an end user license agreement ("EULA") before playing. He accepted two versions of the defendant's EULA, the second of which contained an arbitration provision. *Id*. at *2-3. The defendant moved to compel arbitration and the plaintiff disaffirmed both EULAs in a declaration. *Id*. at *3. The court held that the plaintiff validly disaffirmed the second EULA via his declaration and denied the motion to compel arbitration. *Id*. at *7. However, *R.A.* is distinguishable because nothing in the opinion suggests that the defendant argued that the issue of disaffirmation had been delegated to an arbitrator and the court did not address it.

Next, N.A. cites a November 2, 2022 tentative ruling in *J.R. v. Electronic Arts, Inc*., No. CVRI2200642 (Cal. Sup. Ct.). Opp'n Ex. A. In *J.R.*, the Riverside County Superior Court denied a motion to compel arbitration on the ground that the arbitration provision was not effective

because the contract between the parties was revocable under Family Code section 6710. Ex. A at 5. The court's analysis was brief and does not reference Ninth Circuit or Supreme Court authority. The court does not find *J.R.* persuasive and declines to follow it.

The third case is *Y.H. v. Blizzard Ent., Inc.*, No. 8:22-CV-00998-SSS-ADSX, 2022 WL 17491821, at *3 (C.D. Cal. Nov. 29, 2022), in which the court concluded that the minor disaffirmed an end user license agreement containing an arbitration provision and a class action waiver and accordingly denied a motion to compel arbitration, holding the defendant's "arbitration provision does not apply in this action." After the briefing on this motion was completed, the Ninth Circuit vacated the denial of the motion to compel arbitration and remanded the case for the district court to determine whether the minor plaintiff has Article III standing, without prejudice to the defendant renewing its motion to compel arbitration. *Y.H. by & through Harris v. Blizzard Ent., Inc.*, No. 22-56145, 2023 WL 7015280, at *2 (9th Cir. Oct. 25, 2023). Therefore, *Y.H.* is no longer good law.

In sum, N.A. does not argue that the contract to arbitrate was not formed. He asserts that it is voidable because N.A. was a minor when he entered into it. Through that contract, N.A. and Nintendo agreed to arbitrate issues of enforceability, which includes N.A.'s disaffirmation defense. Therefore, the question of disaffirmation must be decided in arbitration. None of the cases cited by N.A. support a different outcome. Since "a valid agreement to arbitrate exists" and encompasses the parties' dispute, there is nothing further for this court to decide.

Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, although courts have discretion under Section 3 to dismiss claims that are subject to an arbitration agreement. *Sparling v. Hoffman Const. Co., Inc*., 864 F.2d 635, 638 (9th Cir. 1988). Nonetheless, the Ninth Circuit has expressed its "preference for staying an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp*., 741 F.3d 4, 9 (9th Cir. 2014). The court finds it appropriate to stay this action pending the outcome of arbitration proceedings. For case management reasons, the court will accomplish this by administratively closing the case. To reopen the case, the parties are directed to file a joint status

1  report within two weeks of the completion of any arbitration.

## IV. CONCLUSION

For the foregoing reasons, Nintendo's motion to compel arbitration is granted. The court stays this action in its entirety pending the final resolution of the arbitration. The clerk shall administratively close the case. The parties may reopen the case by filing a joint status report within two weeks of the completion of any arbitration.

**IT IS SO ORDERED.**

Dated: December 11, 2023



Donna M. Ryu
Chief Magistrate Judge

9